STEPHANIE YONEKURA
Acting United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
KRISTEN A. WILLIAMS (Cal. Bar No. 263594)
CATHY J. OSTILLER (Cal. Bar No. 174582)
Assistant United States Attorneys
Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0526/6159
     Facsimile: (213) 894-6269
     E-mail:    Kristen.Williams@usdoj.gov
                Cathy.Ostiller@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 12-1170(B)-MWF-1 |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION RE: DEFENDANT ADELINE EKWEBELEM |
| v. | Hearing Date: January 15, 2015 |
| ADELINE EKWEBELEM, | Hearing Time: 3:00PM |
| Defendant. | Location:    Courtroom of the Hon. Michael W. Fitzgerald |

     Plaintiff United States of America, by and through its counsel
of record, the United States Attorney for the Central District of
California and Assistant United States Attorneys Kristen A. Williams
and Cathy J. Ostiller, hereby files its Sentencing Position Regarding
Defendant Adeline Ekwebelem.

1     This position is based upon the attached memorandum of points

2   and authorities, the files and records in this case, and such further

3   evidence and argument as the Court may permit.

4   Dated: December 31, 2014    Respectfully submitted,

5               STEPHANIE YONEKURA
            Acting United States Attorney

6

7               ROBERT E. DUGDALE
            Assistant United States Attorney
            Chief, Criminal Division

8

9                    /s/

10              KRISTEN A. WILLIAMS
            CATHY J. OSTILLER
            Assistant United States Attorneys

11

12              Attorneys for Plaintiff
            UNITED STATES OF AMERICA

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

**DESCRIPTION**                                                                    **PAGE**

TABLE OF AUTHORITIES................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES................................1

I.    INTRODUCTION..................................................1

II.   PROCEDURAL BACKGROUND.........................................1

III.  STATEMENT OF FACTS...........................................3

      A.    The Charged Fraud Scheme (2007-2011)...................3

      B.    Earlier Fraudulent Conduct.............................7

IV.   ARGUMENT.....................................................7

      A.    Legal Standard.........................................8

      B.    Nature and Circumstances of the Offense................9

      C.    History and Characteristics of the Defendant..........11

      D.    Need to Provide Restitution...........................11

      E.    Protection of the Public from Further Crimes by the
            Defendant.............................................12

      F.    Need for the Sentence to Reflect the Seriousness of
            the Offense, Promote Respect for the Law, Provide Just
            Punishment, and Afford Adequate Deterrence.............12

      G.    The Need to Avoid Unwarranted Sentencing Disparities.....13

V.    CONCLUSION..................................................14

DECLARATION OF KRISTEN A. WILLIAMS................................15

i

## <u>TABLE OF AUTHORITIES</u>

DESCRIPTION                                                           PAGE

FEDERAL CASES

<u>United States v. Cantrell</u>,

    433 F.3d 1269 (9th Cir. 2006)...............................8

<u>United States v. Knows His Gun</u>,

    438 F.3d 913 (9th Cir. 2006)................................8

<u>United States v. Mares</u>,

    402 F.3d 511 (5th Cir. 2005)...............................13

<u>United States v. Nichols</u>,

    464 F.3d 1117 (9th Cir. 2006)...............................8


**FEDERAL STATUTES**

42 U.S.C. § 1320a-7(a)(1).......................................11

18 U.S.C. § 3553(a)..........................................8, 9


**STATE STATUTES**

Cal. Bus. & Prof. Code § 2878(f)...............................11

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.    INTRODUCTION**

3

The government hereby submits its sentencing position regarding

4

defendant Adeline Ekwebelem ("defendant").  In light of the multi-

5

year, multi-million dollar fraud defendant perpetrated against a

6

vulnerable government program through the exploitation of elderly and

7

infirm Medicare beneficiaries, a significant custodial sentence for

8

defendant is warranted.  The government, however, does recommend a

9

three-level variance to offset any unfairness in the application of

10

an enhancement for a federal health care offense involving a

11

government health program and losses of more than $7 million under

12

Guidelines § 2B1.1(b)(7), which, though technically applicable, was

13

in effect for only a very small portion of the scheme.  This variance

14

brings the offense level to 32 and applicable Guidelines range to

15

121-151 months imprisonment.  Within that range, the government

16

recommends defendant be sentenced to 121 months imprisonment, which

17

is reasonable, but not greater than necessary, under the advisory

18

Sentencing Guidelines and section 3553(a) sentencing factors.  The

19

government also recommends the Court impose a three-year period of

20

supervised release, a mandatory special assessment of $1,600, and

21

restitution in the amount of $3,452,299.83.

22

**II.   PROCEDURAL BACKGROUND**

23

On December 19, 2013, a federal grand jury returned a 21-count

24

second superseding indictment ("SSI") against defendant, charging her

25

with various counts of conspiracy to commit health care fraud, health

26

care fraud, and illegal remunerations for health care referrals.  (CR

27

107.)  The charges stemmed from a health care fraud scheme defendant

28

led from January 2007 through December 2011 through her durable

medical equipment supply company, Adelco Medical Distributors, Inc. ("Adelco"). (CR 107.) Defendant elected to proceed to trial. Prior to trial, the government moved to dismiss counts five and 10-13, and proceeded on the remaining counts. On September 19, 2014, defendant was convicted on all counts following an eight-day jury trial. (CR 286.)

On November 10, 2014, the United States Probation Office ("USPO") filed its presentence report ("PSR") and recommendation letter for defendant. (CR 322, 323.) In the PSR, the USPO calculated the applicable Guidelines range as follows:

| | | |
|---|---|---|
| Base Offense Level: | 6 | [U.S.S.G. § 2B1.1(a)(1)] |
| Loss Between $7 Million And $20 Million | +20 | [U.S.S.G. § 2B1.1(b)(1)(K)] |
| Health Care Offense Involving Losses of More than $7 Million: | +3 | [U.S.S.G. § 2B1.1(b)(7)] |
| Aggravated Role (Organizer/Manager with >5 Participants) | +4 | [U.S.S.G. § 3B1.1(a)] |
| Abuse of Position of Trust: | +2 | [U.S.S.G. § 3B1.3] |
| Total Offense Level: | 35 | |

(PSR ¶¶ 34-46.) Based on defendant's apparent lack of prior convictions, the PSR also calculated a criminal history category of I. (PSR ¶¶ 52-53.) The resulting Guidelines range corresponding to an offense level of 35 and a criminal history category I is 168-210 months. (PSR ¶ 102.) Within this range, the USPO recommended a sentence of 168 months imprisonment, consisting of 120 months on counts 1-4, 6-9, and 14-18, and 60 months on counts 19 and 20 (all to run concurrently), and 48 months on count 21 (to run consecutively).

2

(USPO Recommendation Letter ("USPO Rec. Letter") at 2; CR 322.)   The USPO also recommended the Court impose a three-year period of supervised release, a special assessment of $1,600, and restitution in the amount of $3,452,299.83.

On November 24, 2014, the government filed its objection to the PSR, objecting to the listing of defendant's prior employment (PSR ¶¶ 88-89) as incomplete based on defendant's own prior filings about that employment (CR 330).

To date, defendant has filed neither objections to the PSR nor a sentencing position.   Defendant remains on bond.   (PSR ¶ 8.)

## III. STATEMENT OF FACTS

Defendant was convicted at trial of various crimes relating to a long-running scheme to defraud Medicare that defendant orchestrated through her company, Adelco.   This scheme led to more than $7.3 million in fraudulent billing to Medicare and nearly $3.5 million in payments by Medicare to defendant.   This scheme was detailed at length both in the government's trial memorandum and over the course of the eight-day trial and, thus, will only be summarized here.[1]

### A.   The Charged Fraud Scheme (2007-2011)

Defendant, a licensed vocational nurse, was the sole owner of Adelco, an enrolled Medicare provider.   As a provider, defendant agreed to only submit truthful and accurate claims to Medicare and agreed she would not submit claims with a reckless disregard for their truth or falsity.   (PSR ¶ 11.)

---

[1] To the extent the facts below are not cited in the PSR, discovery on them was previously produced to defendant and/or testimony on them was introduced at trial.

3

Between January 2007 and December 2011, defendant paid marketers -- including co-defendants Romie Tucker, Cindy Santana, and Maritza Hernandez -- to recruit Medicare beneficiaries for Adelco with promises of free power wheelchairs (and sometimes with cash).  (PSR ¶ 13.)  Ekwebelem would instruct these marketers to take the beneficiaries to a handful of complicit doctors -- including co-defendants Drs. Charles Okoye and Uche Chukwudi -- who were not the beneficiaries' primary care physicians and who saw the beneficiaries one time only during a cursory examination.  (PSR ¶ 14.)  The vast majority of these beneficiaries could walk at the time of the referral or otherwise did not medically need the DME.  Ekwebelem then paid these doctors to prescribe medically unnecessary DME (primarily power wheelchairs) for the beneficiaries and refer them to Adelco.  (PSR ¶ 16.)  Defendant also had the doctors pre-sign face-to-face evaluation forms and then later used templates to fill out (or instruct her employees to fill out) the forms in order to create the appearance that the DME was medically justified.  (PSR ¶¶ 17-18.)

As the evidence and testimony introduced at trial showed, this scheme was extensive, tainting every aspect of Adelco's operations through (1) the payment of kickbacks for referrals, (2) false claims for medically unnecessary equipment, (3) false claims for equipment never provided, or (4) some combination of these actions.  As Adelco's receptionist Arely Rodriguez testified, defendant paid doctors for referrals and instructed Rodriguez to use routinely certain diagnoses and power wheelchair codes and accessories regardless of what the prescriptions said or the patients needed.  Rodriguez also stated that Adelco did not have a specialized technician to evaluate patients for more complex power wheelchairs,

4

even though defendant told Rodriguez to bill using codes for those power wheelchairs.  As Federal Bureau of Investigation Special Agent ("SA") Nancy Kevany testified, Adelco billed Medicare for large numbers of those complex rehabilitation power wheelchairs.  As Department of Health and Human Service, Office of the Inspector General ("HHS-OIG") SA Michael Landon testified, he found many pre-signed face-to-face evaluation forms ("FTF forms") and FTF forms with improbably identical descriptions of medical necessity (including false statements about the beneficiaries' conditions) in defendant's handwriting at Adelco.  As HHS-OIG SA Keith Kuntz testified, the use of marketers, large percentages of claims for power wheelchairs from a handful of referring doctors, large numbers of claims based on referrals from doctors who were not the primary care physicians and saw the patients only once, and large numbers of beneficiaries living more than 20 miles from Adelco that were present at Adelco are all indicative of fraud.  Finally, as Adela Banawis, fraud investigator for a Medicare contractor, testified, Medicare had previously assessed overpayments of hundreds of thousands of dollars against Adelco based on medical reviews of statistically valid random samples of patient files throughout the fraud period.

In addition to exploiting Medicare's honor system, defendant's scheme also took advantage of the beneficiaries' unfamiliarity with the English language and the Medicare system, forcing them to provide their personal Medicare information and sign forms shifting liability for the power wheelchairs to them, even though the forms were neither translated nor explained to the beneficiaries.  In some cases, defendant's conduct even prevented beneficiaries from getting medical care they later needed.  E.U.'s relative testified that U. was unable

1  to obtain the manual wheelchair she needed after a fall, given that

2  Adelco had previously billed Medicare for a medically unnecessary

3  power wheelchair on U.'s behalf.

4      During the above described period, Adelco submitted

5  approximately $7.3 million in claims, and received nearly $3.5

6  million from Medicare in payment for those claims.  More than 75% of

7  Adelco's claims were for power wheelchairs, a type of power mobility

8  device that has some of the highest requirements for medical

9  necessity.  (PSR ¶ 22.)  In some cases, defendant provided the

10  medically unnecessary DME and still reaped a substantial profit,

11  given the Medicare reimbursement rates.  In others, she provided a

12  less-expensive version (a standard power wheelchair, instead of a

13  complex rehab chair, for example).  In still others, she did not

14  provide a power wheelchair, but, nonetheless, submitted claims for

15  beneficiaries who never saw the referring doctors or visited Adelco.

16      The Medicare reimbursements for Adelco's claims went into a bank

17  account defendant controlled, and from which she withdrew substantial

18  amounts of money in checks to herself and in cash.  (PSR ¶¶ 12, 26.)

19      During the course of the scheme, defendant repeatedly attempted

20  to conceal her conduct.  She told Medicare contractors that she had

21  no interactions with the referring doctors, despite frequently

22  visiting their clinics and communicating with them on their personal

23  cellular telephones.  She sent patient files to Medicare in response

24  to records requests after having hastily added documents that were

25  missing from those files (including face-to-face evaluations for

26  medical necessity).  She told the agents investigating this case that

27  she never paid referring doctors to prescribe DME, despite notes and

28

1  spreadsheets found at Adelco and testimony from her receptionist and

2  marketers indicating otherwise.

3      **B.   Earlier Fraudulent Conduct**

4      Additionally, although defendant ramped up the fraud scheme in

5  2007 (the beginning of the charged conspiracy and scheme), she was

6  engaged in similar fraudulent conduct at Adelco as early as 2002.

7  Medicare received complaints from at least ten beneficiaries that

8  they did not receive or did not need DME Adelco billed for them

9  between 2002 and 2005.  (Declaration of Kristen A. Williams ¶ 2.)

10 Defendant also was requesting changes in DME prescriptions based on

11 what Medicare would pay for, irrespective of beneficiary need, as

12 early as 2005.  (See Gov't Mot. to Admit Evidence at 3-4, CR 198.)

13 As the Medicare inspector noted, if the patient "walked into the

14 store," the patient would not qualify for a scooter or a power

15 wheelchair.  (Id. at 4.)  According to the testimony at trial,

16 Medicare reimburses suppliers approximately $3000 more for power

17 wheelchairs than it reimburses for scooters.[2]

18 **IV.  ARGUMENT**

19     The applicable Guidelines sentencing range in this case is 168-

20 210 months.  However, as noted below, the government recommends a

21 three-level downward variance, which brings the total offense level

22 down to 32 and results in a Guidelines sentencing range of 121-151

23 months.

24 _____

25     [2] Because this conduct is a part of the same scheme through the
   same DME company with the same victim, Medicare, it constitutes
26 relevant conduct under U.S.S.G. § 1B1.3 as part of the same course of
   conduct or common scheme or plan as the offense of conviction.  As
27 argued below, the conduct is also aggravating and supports the
   rejection of any downward departure from the applicable Guidelines
28 range.

1          **A.    Legal Standard**

2          While not definitive, the Guidelines range provides the starting

3    point for finding a reasonable sentence and must then be considered

4    with the factors set forth in 18 U.S.C. § 3553(a).  See <u>United States</u>

5    <u>v. Cantrell</u>, 433 F.3d 1269, 1279 (9th Cir. 2006).  "To comply with

6    the requirements of <u>Booker</u>, the district court must have sufficiently

7    considered the Guidelines as well as the other factors listed in

8    § 3553(a).  This requirement does not necessitate a specific

9    articulation of each factor separately, but rather a showing that the

10   district court considered the statutorily-designated factors in

11   imposing a sentence."  <u>United States v. Nichols</u>, 464 F.3d 1117, 1125

12   (9th Cir. 2006) (quoting <u>United States v. Knows His Gun</u>, 438 F.3d

13   913, 918 (9th Cir. 2006)).

14         The Section 3553(a) factors are as follows:

15   1) The nature and circumstances of the offense and the
        history and characteristics of the defendant;
16
17   2) The need for the sentence imposed –

18       (A)  To reflect the seriousness of the offense, to
         promote respect for the law, and to provide just
19       punishment for the offense;

20       (B)  To afford adequate deterrence to criminal
         conduct;
21
22       (C)  To protect the public from further crimes of the
         defendant; and
23       (D)  To provide the defendant with needed educational
         or vocational training, medical care, or other
24       correctional treatment in the most effective manner;

25   3) The kinds of sentences available;

26   4) The kinds of sentence and the sentencing range
        established for the offense and the defendant as set forth
27      in the Sentencing Guidelines;

28   5) Any pertinent policy statement issued by the Sentencing
        Commission;

6) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

7) The need to provide restitution to any victims of the offense.

See 18 U.S.C. § 3553(a).  The government believes that the factors set forth in 18 U.S.C. § 3553(a) would be satisfied by a 121-month sentence and that such a sentence would be "sufficient, but not greater than necessary" to comply with the purposes enumerated in 18 U.S.C. § 3553(a)(2), discussed further below.  18 U.S.C. § 3553(a).

### B.   Nature and Circumstances of the Offense

Defendant orchestrated a multi-million-dollar scheme to defraud Medicare over four years between 2007 and 2011.  The scheme relied upon her exploitation of Medicare's trust in her as an enrolled Medicare provider and led to nearly $3.5 million in losses to Medicare, a program that can hardly afford them.

In aggravation, the evidence shows that defendant was the scheme's leader, obtaining a steady stream of Medicare beneficiaries and DME prescriptions through the payments of illegal kickbacks to various participants she brought into the scheme.  She acted knowing that the DME was medically unnecessary and sometimes not provided and knowing that the payment of kickbacks was illegal.  She created fraudulent documentation in a superficial attempt to fool Medicare as to the DME's medical necessity.  She lied to agents when confronted with her conduct.  Defendant was also the scheme's primary beneficiary, particularly when compared to her co-defendants, who were paid a relatively small portion of the profit defendant made from the scheme.

9

In mitigation, the government recommends a three-level variance to negate the effect of the sentencing enhancement under Guidelines § 2B1.1(b)(7), which is technically applicable, but which the government believes results in an unfair outcome.  Section 2B1.1(b)(7) calls for an adjustment of three levels for a federal health care offense involving a government health care program where the loss amount is over $7 million.  This enhancement was added to the Sentencing Guidelines on November 1, 2011.  In this case, the Second Superseding Indictment alleges that defendant was a member of the conspiracy from January 2007 through December 2011, just after the addition of the enhancement.  However, the government's review of the claims data demonstrates that Adelco only submitted 27 claims to Medicare that had a date of service after November 1, 2011, and was only paid slightly more than $6,000 for them.  These claims were all for DME rentals, not the original rentals (or purchase) for which Adelco would have had to obtain a new patient or new prescription.  Thus, although it is technically correct to apply this three-level enhancement, it does not seem fair to do so in this situation.  Accordingly, the government recommends a three-level downward variance based on the nature and circumstances of the offense to negate the effect of this enhancement.

On balance, these aggravating and mitigating factors support the 121-month sentence the government recommends.  Further downward departure is not warranted, particularly in light of the fact that defendant and Adelco were engaged in fraudulent conduct concerning medically unnecessary DME as early as 2002, five years before the charged scheme began, conduct which is not reflected in the applicable Guidelines range here.

## C.   History and Characteristics of the Defendant

The government anticipates that defendant will point in mitigation to her young child.  (PSR ¶ 71.)  While the government is sympathetic to the hardship that a substantial period of incarceration for defendant will cause for her family, that hardship must be laid at defendant's feet based on the choices she made in continuing (and, indeed, in ramping up) her fraud after the child's birth.  Additionally, the child's father appears to be a suitable guardian in defendant's absence.

Defendant may also point to her lack of criminal history.  While laudable, that fact has already been taken into account in calculating the Guidelines range.  Moreover, because this fraud scheme continued for at least four years, and likely many more, defendant's conduct here can hardly be said to be aberrational.  Unlike many other defendants this Court sees, defendant had the educational background to obtain legitimate, highly-paid work in a field with a well-known nursing shortage.  Instead, defendant turned to crime and easy money.

## D.   Need to Provide Restitution

Defendant's ability to provide restitution in the future will be limited by (1) her exclusion from the Medicare program and (2) the revocation of her nursing license, both likely consequences of her felony convictions in this case.  See 42 U.S.C. § 1320a-7(a)(1) (concerning mandatory exclusion for those convicted of criminal offenses related to the delivery of health care services); Cal. Bus. & Prof. Code § 2878(f).  Those consequences represent the reasoned position of Medicare and the licensing board that individuals who have engaged in fraud by abusing their status as licensed

11

professionals and Medicare providers present a danger to society and have not met the high standards expected of them.  Thus, the Court should not be concerned with fashioning a sentence that would permit defendant to continue billing Medicare, since she will be unlikely to be able to do so, at least for some period of time.  As discussed below, a period of incarceration to serve the important deterrent interests, combined with a three-year period of supervised release in which defendant will be required to seek employment to work on paying Medicare back, is appropriate.

**E.    Protection of the Public from Further Crimes by the Defendant**

As noted above, defendant's likely exclusion from the Medicare program and the likely revocation of her nursing license to some degree limits the amount of additional protection required.  However, defendant's failure to report accurately her recent employment with a home health agency raises concerns about the recidivism risk defendant poses, particularly given the prevalent home health fraud (often involving the use of unlicensed nurses) in Los Angeles.

**F.    Need for the Sentence to Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment, and Afford Adequate Deterrence**

The seriousness of this offense lies in the substantial losses to a vulnerable government program, often through the use of the personal information of equally vulnerable Medicare beneficiaries. The volume of those losses, length of the scheme, and defendant's attempts at concealment all also evidence a lack of respect for the law.  Most significantly, however, a substantial custodial sentence is warranted in light of the need to deter generally licensed professionals and Medicare providers from abusing those positions of

1    trust in ways that cost Medicare billions each year and undermine

2    public confidence in medical providers.  Prosecutions and stiff

3    sentences represent the government's best opportunity to limit future

4    fraud.  Moreover, the pay-and-chase structure of Medicare means that

5    individuals like defendant can cause a considerable amount of harm

6    before the fraud is ever uncovered.  A sentence lower than the 121

7    months recommended by the government would undermine the need to

8    provide adequate deterrence.

9        **G.   The Need to Avoid Unwarranted Sentencing Disparities**

10        A sentence within the Guidelines range is usually the best way

11   to avoid sentencing disparities.  See United States v. Mares, 402

12   F.3d 511, 518-19 (5th Cir. 2005).  Here, the government's

13   recommendation takes into account the applicable Guidelines range.

14   As noted above, the government has also recommended a three-level

15   variance in order to ensure that the Guidelines range fairly reflects

16   defendant's conduct.  Because the government previously recommended a

17   variance on similar grounds for co-defendant Charles Okoye, the

18   government's recommendation to apply the same variance here attempts

19   to avoid unwarranted sentencing disparities.

20        In making its recommendation, the government has also considered

21   the sentences of other, similarly-situated defendants who have been

22   involved in DME fraud as Medicare providers.  In particular, the

23   government has considered the recent imposition of a 121-month

24   custodial sentence for a defendant who ran a two-year scheme to

25   defraud Medicare, involving using beneficiaries' identities to submit

26   additional false DME claims.  (See United States v. Vahe Tahmasian,

27   13-313-PA, Docket No. 128.)  In this case as in Tahmasian, as a part

28   of a broader scheme of fraudulent claims, defendant used the

identities of beneficiaries (including B.P. and M.M., who testified at trial) without their knowledge to submit claims for expensive power wheelchairs the beneficiaries never received.[3]  Indeed, the duration of defendant's scheme and the losses it caused both exceed those present in the <u>Tahmasian</u> case, which argues against any lower sentence for defendant here.

**V.    CONCLUSION**

For the reasons stated above, the government recommends defendant be sentenced to 121 months imprisonment, consisting of 120 months on counts 1-4, 6-9, and 14-18, and 60 months on counts 19 and 20, to run concurrently, and 1 month on count 21, to run consecutively.  The government further recommends that the Court impose a three-year period of supervised release, a mandatory special assessment of $1,600, and restitution in the amount of $3,452,299.83.

---

[3] In <u>Tahmasian</u>, the defendant was charged with aggravated identity theft, a charge that was not present in this case. Nonetheless, the underlying conduct is similar, meaning that the sentences should be as well, irrespective of the specific charges brought.

14

<u>**DECLARATION OF KRISTEN A. WILLIAMS**</u>

I, Kristen A. Williams, state and declare as follows:

1.    I am an Assistant United States Attorney for the Central District of California and am one of the attorneys assigned to the prosecution of <u>United States v. Adeline Ekwebelem, et al.</u>, CR No. 12-01170(B)-MWF.  I make this declaration in support of the government's sentencing position regarding defendant Adeline Ekwebelem.

2.    During the course of the investigation into Adelco, I received from case agents a summary of complaints made to Medicare regarding Adelco which I am informed and believe that the case agents obtained from a Medicare contractor.  That summary shows that ten beneficiaries made complaints that they either did not receive the services Adelco billed or did not need the equipment Adelco provided between October 18, 2002, and June 8, 2005.  This summary was produced to defendant's then-counsel Jerry Kaplan at Bates No. 14832 on January 31, 2014.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief and that this declaration was executed on December 30, 2014, at Los Angeles, California.

                              ___/s/ Kristen A. Williams__
                              KRISTEN A. WILLIAMS

15

CERTIFICATE OF SERVICE

I, ALEJANDRA SOTO, declare:

That I am a citizen of the United States and resident or employed in Los Angeles County, California; that my business address is the Office of United States Attorney, United States Courthouse, 312 North Spring Street, Los Angeles, California 90012; that I am over the age of eighteen years, and am not a party to the above-entitled action;

That I am employed by the United States Attorney for the Central District of California who is a member of the Bar of the United States District Court for the Central District of California, at whose direction I served a copy:

GOVERNMENT'S SENTENCING POSITION RE: DEFENDANT ADELINE EKWEBELEM

service was:

[✓] Placed in a closed envelope, for collection and interoffice delivery addressed as follows:

[] Placed in a sealed envelope for collection and mailing via United States Mail addressed as follows:

[] By hand delivery addressed as follows:

[] By facsimile as follows:

[] By e-mail as follows:

[] By federal express as follows:

USPO Luis Rivas
U.S. Probation Office
312 N. Spring Street, 6th Floor
Los Angeles, CA 90012

This Certificate is executed on December 31, 2014, at Los Angeles, California.

I certify under penalty of perjury that the foregoing is true and correct.

_____
ALEJANDRA SOTO